CECELIA Z. MACKENZIE *vs.* SCHOOL COMMITTEE OF IPSWICH.

Essex.    February 8, 1961. — May 9, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*School and School Committee. Equity Pleading and Practice,* Appeal, Dismissed school teacher's appeal. *Certiorari. Words,* "Justified."

A proceeding in the Superior Court on an appeal thereto under G. L. c. 71, § 43A, inserted by St. 1958, c. 462, by a public school teacher from a vote of the school committee dismissing her cannot be brought to this court by an appeal from the final decree of the Superior Court; the only available method of reviewing the proceeding is certiorari.  [613]

In a proceeding in the Superior Court on an appeal thereto under G. L. c. 71, § 43A, inserted by St. 1958, c. 462, by a public school teacher from a vote of the school committee dismissing her, the pertinent facts are to be determined de novo by the court on the evidence presented to it and the vote of the committee is to be affirmed or reversed on the basis of such facts, irrespective of the evidence heard by the committee and the committee's findings.  [614–616]

Where, in a proceeding in the Superior Court on an appeal thereto under G. L. c. 71, § 43A, inserted by St. 1958, c. 462, by a public school teacher from a vote of the school committee dismissing her under § 42 for "conduct unbecoming a teacher," it was determined by the judge that the alleged conduct in fact occurred and that it was conduct of such character, it was beyond the power of the judge to reverse the vote of the school committee on the ground that nevertheless the teacher ought not in justice be dismissed in view of her good character, qualifications, long service, and other stated circumstances: whether in all the circumstances the teacher should be dismissed by reason of such conduct was a matter for the school committee to decide in its discretion.  [616–617, 619–620]

MacKenzie *v.* School Committee of Ipswich.

APPEAL, filed in the Superior Court on June 26, 1959, under G. L. c. 71, § 43A, inserted by St. 1958, c. 462, from a vote of the defendant school committee.

The case was heard by *Barron, J.*

*Harold M. Willcox,* Town Counsel, for the defendant.

*A. Kenneth Carey,* (*Donald E. Carey* with him,) for the plaintiff.

WHITTEMORE, J. This is the appeal of the Ipswich School Committee from a final decree in the Superior Court, entered May 13, 1960, which reversed the vote of the committee of June 4, 1959, to dismiss the petitioner, Cecelia Z. MacKenzie, from her position as a teacher.

General Laws c. 71, § 42, provides that a "teacher . . . employed at discretion . . . shall not be dismissed, except for inefficiency, incapacity, conduct unbecoming a teacher . . ., insubordination or other good cause, . . . nor unless [at a hearing if requested] the charge or charges shall have been substantiated."

General Laws c. 71, § 43A, inserted by St. 1958, c. 462, provides: "Any teacher . . . employed at discretion who has been dismissed by vote of a school committee under the provisions of section forty-two or section sixty-three may, within thirty days after the vote of dismissal appeal therefrom to the superior court in the county in which he was employed. The court shall advance the appeal for a speedy hearing and after such notice to the parties as it deems reasonable hear the cause 'de novo.' If the court finds in favor of the school committee, the vote of the school committee shall be affirmed; otherwise it shall be reversed and the appellant shall be reinstated to his position without loss of compensation. The decision of the court shall be final, except as to matters of law."

1. We are constrained to hold that errors of law in proceedings in the Superior Court under G. L. c. 71, § 43A, may not be brought to this court by an appeal, and that a writ of certiorari is the only available method of review.[1]

[1] Prior to the enactment of G. L. c. 71, § 43A, review of removal cases was available by writ of mandamus to the school committee. See, for example, *Faxon* v. *School Comm. of Boston*, 331 Mass. 531.

Apart from review under the State Administrative Procedure Act (G. L. c. 30A), if available, certiorari is the only way of reviewing decisions declared final by statute.   *Swan* v. *Justices of the Superior Court,* 222 Mass. 542, 544–545. *McLaughlin* v. *Mayor of Cambridge,* 253 Mass. 193, 199–200.   *Whitney* v. *Judge of the Dist. Court of No. Berkshire,* 271 Mass. 448, 458.   *Merchants Mut. Cas. Co.* v. *Justices of the Superior Court,* 291 Mass. 164, 165.   *Hough* v. *Contributory Retirement Appeal Bd.* 309 Mass. 534, 535.   *Sullivan* v. *Committee on Rules of the House of Representatives,* 331 Mass. 135, 139.   *Natick* v. *Massachusetts Dept. of Pub. Welfare,* 341 Mass. 618, 620–621.

We construe the exception in c. 71, § 43A ("except as to matters of law"), as a recognition of the inevitable right of review by certiorari rather than an intention to provide for review by exceptions or appeal.   The omission to grant "rights of appeal and exception" (see, for example, G. L. c. 40A, § 21; c. 41, § 81BB) and the specification of finality are determinative.

Although this appeal is without standing, the issues have been fully argued and the period within which a petition may be filed for a writ of certiorari has not expired.   G. L. c. 249, § 4.   It is appropriate therefore that we consider the issues on the merits, as though the case had reached us in certiorari proceedings.[1]   See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731; *Scott* v. *Manager State Airport, Hanscom Field,* 336 Mass. 372, 375, 377.

2.   The provision in G. L. c. 71, § 43A, to "hear the cause 'de novo' " reads as a mandate to determine anew whether the charge or charges are substantiated.   The "cause" on appeal is the cause which was tried before the

---

[1] In many or most cases under G. L. c. 71, § 43A, the issue of law may be whether acts established by the testimony or found by the judge constitute ground of removal.   General Laws c. 249, § 4, provides, "It shall be open to the petitioner to contend . . . that the evidence . . . was as matter of law insufficient to warrant such action, finding or conclusion."   The return may include transcripts of evidence.   *Sullivan* v. *Municipal Court of the Roxbury District,* 322 Mass. 566, 573–574.   General Laws c. 213, § 1D, applies only to the appeal to the full court from the final judgment or decisive order rendered by a single justice or by the Superior Court upon the petition for the writ of certiorari or of mandamus.   .

school committee. That cause is not what action is appropriate or wise, the offences being established; it is, has the teacher offended in the way charged?

For cases showing the paramount power of the school committee under G. L. c. 71, in respect of the employment and discharge of teachers subject only to such express restrictions as the Legislature has imposed on its general grant of power, see *Knowles* v. *Boston*, 12 Gray, 339, 340; *Leonard* v. *School Comm. of Springfield*, 241 Mass. 325, 329; *Corrigan* v. *School Comm. of New Bedford*, 250 Mass. 334; *Toothaker* v. *School Comm. of Rockland*, 256 Mass. 584; *Sheldon* v. *School Comm. of Hopedale*, 276 Mass. 230, 235; *Rinaldo* v. *School Comm. of Revere*, 294 Mass. 167; *Graves* v. *School Comm. of Wellesley*, 299 Mass. 80; *Davis* v. *School Comm. of Somerville*, 307 Mass. 354, 362; *Moran* v. *School Comm. of Littleton*, 317 Mass. 591; *Faxon* v. *School Comm. of Boston*, 331 Mass. 531.

The statute differs in an important respect from G. L. c. 31, § 45, and statutes predecessor thereto, under which District Courts have reviewed removals, suspensions, etc. in civil service cases, and which have been held not to involve a transfer of executive power to the courts. General Laws, c. 31, § 45, specifies that if "the court finds that such action was justified . . . [it] shall be affirmed; otherwise . . . the petitioner shall be reinstated." The word "justified" means "done upon adequate reasons sufficiently supported by credible evidence, when weighed by an unprejudiced mind, guided by common sense and by correct rules of law." *Selectmen of Wakefield* v. *Judge of First Dist. Court of E. Middlesex*, 262 Mass. 477, 482. *Sullivan* v. *Municipal Court of the Roxbury Dist.* 322 Mass. 566, 573. Under that statute, the findings of the civil service commission on oral testimony are not to be reversed unless plainly wrong. *Mayor of Beverly* v. *First Dist. Court of Essex*, 327 Mass. 56, 61.

General Laws c. 71, § 43A, by contrast requires the continued employment of a teacher, notwithstanding the reasonable conclusion of the committee on adequate evidence

that a charge or charges have been substantiated, if the reasonable conclusion of the judge in the Superior Court, on the evidence there presented, is that the charge has *not* been made out. The parties have not argued the issue whether this invades the executive power.[1] See *Driscoll* v. *Mayor of Somerville,* 213 Mass. 493. Compare *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 558–559. We reserve the point for, assuming the constitutionality of the statute, the decree below was not justified on a critical finding of fact made by the judge.

3. The school committee rightly relies on its charge, in the words of G. L. c. 71, § 42, of "conduct unbecoming a teacher" and the finding of the judge of "improper and unbecoming conduct" as shown in these facts: The teacher had received a letter directing her to appear at a special meeting of the committee on January 6, 1959, to be questioned. There were present the seven members of the committee; a reporter; Dr. Robert O'Kane, the superintendent of schools; the teacher and her attorney. At this meeting the teacher "muttered 's.o.b.' to Dr. O'Kane, as testified [to] by him; . . . it was audible to him . . . not said in a normal tone of voice . . . it was either lip read or audible to two other adult persons present . . . namely, a reporter and a member of the School Committee." It is apparent from the record that although the initials "s.o.b." were used at the hearing, what was spoken were the words "son of a bitch." We construe the finding accordingly as a finding that those words were used.

The judge's finding that the teacher's utterance was improper and unbecoming conduct was plainly justified, if not required. The judge, however, also ruled that this was nevertheless not conduct contemplated by the statute as a cause for dismissal. That ruling was wrong. The judge specified as the basis for her conclusion the teacher's "good character, qualifications, school and public service," and

---

[1] The undoubted power of the Legislature to reduce or reassign within the executive branch of the government the executive powers in respect of schools, now lodged in local school committees, is of course not put in issue by G. L. c. 71, § 43A.

MacKenzie v. School Committee of Ipswich.

"the following described circumstances."[1]   For the reasons next stated these specifications do not justify the conclusion.

The general considerations specified, although relevant to the exercise by the committee of its discretion, do not in any way alter the nature of the unbecoming act.   The special considerations set forth are in the same aspect. The absence of a basis for a finding of other instances of unbecoming conduct in the twenty-three year period of the teacher's service is not significant.   There was no occasion for the committee to prove long past conduct.   The implication of the finding that this was a "single isolated case" is that it did not reflect the otherwise unquestionably exemplary conduct of the teacher.   This was a consideration for the committee in the exercise of its discretion. We note, however, that the full implication is unjustified in the light of other findings which tended to show a pattern

[1] "1.   This was a single isolated case in almost 23 years as a public school teacher in Ipswich.

"2.   At the time of the muttering, Mrs. MacKenzie was in a temporary abnormal emotional and mental state, unnerved and distraught, under very severe strain because of the following:

"(a) She had received a peremptory order to attend this Special School Committee Meeting on January 6th to be questioned with the belief that this action was initiated by Dr. O'Kane and that she would be subjected to unjust scrutiny and with apprehension at the real purpose of the meeting.   The implications to her of the purpose of this meeting were such that she retained the services of an attorney to accompany her.

"(b) At the beginning of the meeting there were efforts made by some Members of the School Committee to prevent her from having a lawyer represent her.

"(c) She had a feeling of great insecurity and fear of losing her livelihood and her pension with a daughter dependent upon her for support.

"(d) She had a feeling of unfair and unjust treatment against her by Dr. O'Kane because of the long delay and difficulty encountered in getting her salary increased, and because of the receipt of many letters from Dr. O'Kane which were harassing to her and appeared to be discriminatory against her. This excited resentment and provocation in her against Dr. O'Kane.

"(e) She had a fear of losing her career after a long preparation of many years of effort to advance herself professionally, taking many courses and getting a Master's Degree.

"(f) She feared the stigma and disgrace of being held in public scorn with the attendant and unfavorable publicity in the community in Ipswich where she lived for many years; where she, herself, had been elected by popular vote to the Ipswich School Committee, where she had participated in Civil Defense activities; and where she was known for about 30 years by numberless pupils whom she had taught and who were now adults.

"3.   The utterance did not affect or interfere with building up or maintaining an efficient school system or have any detrimental effect whatsoever, upon the morale, education and welfare of the pupils."

of conduct likely to interfere with the orderly administration of the school system.[1]

The findings that the teacher was under a very severe strain and felt resentment to the superintendent are undoubtedly justified inferences.[2] But while such circumstances would be highly relevant to the discretionary action of the committee they do not bar the unbecoming conduct as a ground of removal.

The absence of effect of the unbecoming conduct upon pupils was irrelevant. Whether it interfered with the efficiency of the school system had to be determined by the committee in context. It was conduct in the course of administering the school department, and in a highly sensitive aspect of administration. If the specification is a ruling that the committee could not rationally find the unbecoming conduct relevant in removal proceedings it is in error.

The judge's findings in respect of other charges in substance exonerate the teacher from any intentional violation of parking regulations; from any insubordination in leaving school early (but after classes), and in good faith, without the permission which had been requested, to go to an educational lecture; and from any significant interference with the Language Arts program. The judge also found that the teacher "has not had a bad effect on the school program or upon the children, nor have her actions im-

[1] "There was also evidence presented by the School Committee of a few minor acts by the Petitioner which I find and rule are not causes for dismissal under the statute; for example, one of the charges is that in filling out forms for records which were submitted by the Superintendent to her, she wrote on the margin and added further information to the forms, especially on those forms relating to her salary; that on one occasion when the principal called her on the loud-speaker at about quarter past 3, a half hour after school closes to come to his office, she answered that she would be delayed as she was helping a school pupil with some of his difficulties. A few moments later she was called to come immediately and she responded and came." For the incident of leaving school early without permission, but in good faith, see opinion, *post*.

[2] The school committee brief refers to the absence of evidence that the teacher felt insecure because of her daughter, and the possible loss of pension, and that she feared stigma and disgrace in the community. Perhaps the inference was justified that the teacher's dominating emotion was antagonism to the superintendent. For the teacher's retirement allowance rights see G. L. c. 32, § 10.

paired the morale of the staff, pupils and school system, which the Superintendent charged," and also that she "was loyal to the school system and faithful to her duties as a teacher, capable, efficient and used her best ability to carry out her duties as a teacher."

The ruling of the judge goes beyond the statutory mandate. It is in substance a decision that, in all the circumstances, justice dictates that the teacher not be dismissed for the unbecoming conduct found. The judge was understandably impressed, we conclude, with the fact that there had been friction between the teacher and the superintendent.[1] The findings suggest her view that the fault was in part at least his. But there is no basis for concluding that the vote and dismissal were prompted by personal hostility, ill will or political animosity so that the charge was a mere subterfuge. Compare *Sweeney* v. *School Comm. of Revere,* 249 Mass. 525, 530. See *Kelley* v. *School Comm. of Watertown,* 330 Mass. 150, 153, and cases cited.

Teachers of long service are particularly entitled to protection against arbitrary and unfair action by superiors. Ability and faithful service are not to be lightly disregarded. It is to be assumed that school committees when faced with the necessity of determining whether other attributes of the teacher in the particular circumstances require dismissal will make every reasonable allowance for misunderstandings and personality conflicts. But if there is ground for dismissal, the decision is theirs. *Toothaker* v. *School Comm. of Rockland,* 256 Mass. 584, 592. *Corrigan* v. *School Comm. of New Bedford,* 250 Mass. 334, 339.

Although the committee's conduct is not in issue, we see no basis for concluding that its members did not carefully and conscientiously weigh the important considerations noted by the judge. The related circumstances suggested by the judge's findings in respect of the unsustained specifications by the committee were relevant and could appro-

---

[1] "Dr. O'Kane was not remaining as Superintendent . . . after the end of June, 1959, so that there would be no alleged possible friction between him and the appellant in the future."

priately be considered by the committee in determining the exercise of its discretion in respect of the sustained charge. See *Mayor of Medford* v. *Judge of First Dist. Court of E. Middlesex,* 249 Mass. 465, 473.

4.   For the reasons stated in section 1 of the opinion, the appeal is to be dismissed, without prejudice, however, to the timely filing of a petition for a writ of certiorari under G. L. c. 249, § 4.

*So ordered.*