## JOHN T. COSTELLO, JR. vs. SCHOOL COMMITTEE OF CHELSEA & another.[1]

No. 88-P-203.

Suffolk. March 16, 1989. — October 12, 1989.

Present: BROWN, PERRETTA, & DREBEN, JJ.

*School and School Committee,* Termination of employment, Tenure of personnel. *Statute,* Construction. *Teachers' Retirement Board. Due Process of Law,* Employment. *Notice,* Termination of employment. *Words,* "Removal," "Discharge."

A school superintendent's nonrenewal of appointment of a nontenured employee's position as administrator of special education was not a "removal or discharge" within the meaning of G. L. c. 32, § 16 (2), so as to entitle the employee to written notice and a hearing under that statute [824-827], nor did it constitute a deprivation of a property interest entitled to due process protections [827-828].

A nontenured public school employee received a timely written notice under G. L. c. 71, § 41, of his nonreappointment to a fourth consecutive term as a special education administrator. [828-829]

CIVIL ACTION commenced in the Superior Court Department on January 13, 1986.

The case was heard by *Cortland A. Mathers,* J., on a statement of agreed facts.

*Arthur H. Goldsmith* for the plaintiff.

*Howard L. Greenspan* for the defendants.

BROWN, J. The plaintiff challenges the legality of the defendant school committee's failure to reappoint him. The case is before us on a statement of agreed facts.

The plaintiff, a fifty-five year old navy veteran, had worked for twenty-four years in various Massachusetts public schools as a teacher, guidance counselor, psychologist, and adminis-

---

[1] J. Frank Herlihy, individually, as the superintendent of schools of Chelsea.

trator of special education.[2] On September 7, 1982, he had been appointed by the school committee of Chelsea for a one-year term to the position of administrator of special education for the Chelsea school department. On April 7, 1983, and again on April 12, 1984, the plaintiff was reappointed to this position for one-year terms.

On March 8, 1985, the plaintiff, up for his fourth consecutive one-year term (and thus tenure status),[3] received an evaluation by the school superintendent stating that the plaintiff was not being recommended for reappointment.[4] The evaluation was shown to and signed by the plaintiff.

"Official notice" advising the plaintiff of the superintendent's recommendation of nonreappointment and that the plaintiff's "final day of employment in the Chelsea School System would be the last day of the 1984/1985 School year" was sent by certified mail to the plaintiff's residence on April 10, 1985.[5] A copy of the letter also was delivered to the plaintiff's school office the same day.

---

[2] Between 1962 and 1985, the plaintiff was a contributing member of the State teachers' retirement system and had accumulated twenty-four years of "creditable service" within the meaning of G. L. c. 32, § 16, as appearing in St. 1982, c. 630, § 21.

[3] Four consecutive appointments to the same school administrative position are required to receive tenure status. See G. L. c. 71, § 42A. In addition, the plaintiff would have received a salary increase.

[4] Without the recommendation of the school superintendent, the school committee had no authority to employ the plaintiff. See G. L. c. 71, § 38. The plaintiff had been recommended for reelection or reappointment in 1983 by the then acting superintendent, and again in 1984 by Herlihy. Neither of these recommendations was particularly positive about the plaintiff's performance.

[5] The superintendent asked the plaintiff to come to his office on April 9, 1985, at which time he intended officially to "notify" the plaintiff of his nonreappointment. The plaintiff, however, was unable to meet with the superintendent that day due to an engagement he had with his son. The plaintiff subsequently went on vacation on April 10 and did not return to the school until April 22.

Notice of the certified letter was twice delivered to the plaintiff's postal box. The first delivery occurred on April 12, 1985, when the defendant was not home. The second delivery occurred on April 19, 1985, at which time the plaintiff declined to accept it. The plaintiff did not "discover" the letter until he returned to the school on April 22. The plaintiff had asked

The plaintiff last worked as the administrator of special education on June 26, 1985.[6] The parties agree that the plaintiff did not voluntarily resign, retire, or leave his position as administrator of special education and neither the superintendent nor the school committee sent or filed with the Teachers' Retirement Board any written notice containing a fair summary of facts about the action taken with respect to the plaintiff.

A Superior Court judge rendered judgment for the defendants concluding that the "nonrenewal" of the plaintiff's appointment did not constitute a "removal or discharge" within the meaning of G. L. c. 32, § 16 (2), as appearing in St. 1982, c. 630, § 21, nor a deprivation of any constitutionally protected liberty or property interest. The judge also found that the superintendent's March 8, 1985, written evaluation was sufficient notice to the plaintiff under G. L. c. 71, § 41, particularly in light of the superintendent's attempts to give the plaintiff further notice prior to the April 15, 1985, deadline prescribed by that statute.

1. Pursuant to G. L. c. 32, § 16 (2), a "veteran [who] has completed ten or more years of creditable service" or a member of the contributory retirement system "who has completed twenty or more years of creditable service" is entitled to a "written notice . . . containing a fair summary of the facts" as well as a hearing[7] if such person was "remov[ed] or dis-

---

his secretary to inform the superintendent's office that he was taking three owed vacation days on April 10, 11, and 12.

[6] The school committee, upon the recommendation of the superintendent, approved and appointed a successor for the position on June 27, 1985.

[7] The hearing would take place before the Teachers' Retirement Board. G. L. c. 15, § 16. See 807 Code Mass. Regs. §§ 2:00 & 4:00 (1987). It has been held that, unlike G. L. c. 71, § 43A, which authorizes the Superior Court to hear appeals by tenured teachers who have been dismissed, the review undertaken by the board is not de novo. See *School Comm. of Brockton* v. *Teachers' Retirement Bd.*, 393 Mass. 256, 262-263 (1984). A subsequent right of review is available in the District Court. See G. L. c. 32, § 16 (3).

The relationship of § 16 (2) to the general provisions governing teacher and school personnel demotions and dismissals under G. L. c. 71 is "confusing and somewhat conflicting." *Haskell* v. *School Comm. of Framingham,* 17 Mass. App. Ct. 628, 633 (1984). See *School Comm. of Brockton,*

charge[d]." As no such notice was given to the plaintiff, the dispositive issue is whether the plaintiff was "removed or discharged" within the meaning of § 16 (2).

Section 16 (2) is a provision found within G. L. c. 32 — a chapter "establish[ing] a single contributory retirement law for public employees." St. 1945, c. 658. The chapter "represents an attempt to collect most of the statutes regulating a large number and variety of separate and distinct contributory and noncontributory retirement and pension systems for public employees." *School Comm. of Brockton* v. *Teachers' Retirement Bd.*, 393 Mass. 256, 261 (1984), quoting from *Bianchi* v. *Retirement Bd. of Somerville*, 359 Mass. 642, 647 (1971). In addition to the requirement of notice and a fair summary of the facts, § 16 (2) empowers the retirement board to reinstate a "remove[d] or discharge[d]" member if such removal or discharge was not "justified." See *Campana* v. *Board of Directors of the Mass. Housing Fin. Agency*, 399 Mass. 492, 493 (1987).[8]

The plaintiff argues that the Legislature must have intended the terms "removal" and "discharge" in § 16 (2) to have separate and distinct meanings as it would otherwise have been superfluous to use both terms.[9] Noting that the term "discharge" is defined in G. L. c. 31, § 1 (note 9, *supra*), as a "permanent, involuntary separation . . . , from . . . employment," the plaintiff argues that the term "removal," albeit similarly indicating a separation or severance from employment, encompasses a much broader range of actions and should be understood as "any form of involuntary ousting from an employed position, or any nontemporary termination of employment and earnings." As such, he contends that the elimination of payment, the failure to offer reassignment or mention any recall or re-em-

393 Mass. at 259-260. The plaintiff in this case was not "tenured" and at least for that reason alone could not resort to G. L. c. 71, § 43A.

[8] The parties agree that aside from the question whether the plaintiff was subject to a "removal or discharge," he met all of the requirements of the statute, i.e., age, status, and longevity.

[9] Chapter 32 does not define either removal or discharge. However, "discharge" is defined in the civil service law, G. L. c. 31, § 1, as "the permanent, involuntary separation of a person from his civil service employment by his appointing authority."

ployment possibilities, and the appointment of a replacement all had "the formal legal effect" of a "removal" thereby entitling him to the notice required by § 16 (2). Contrast *Bagley* v. *Contributory Retirement Appeal Bd.*, 397 Mass. 255 (1986). We disagree. The words "removal" and "discharge" connote the termination of employment of a person who has a continuing right to it, not the failure to rehire someone who has to be renominated and reappointed every year.

The plaintiff's position suffers in light of the annual renewal or nonrenewal aspect of his nontenured employment. Initially, it should be noted that the plaintiff was first "appointed" to the position of administrator of special education for a one-year (school) term. As a nontenured administrator (contrast G. L. c. 42A) under a yearly contract, the plaintiff was subject to annual evaluation and "reelection" or "re-appointment" (or non-reelection or nonreappointment) by means of a recommendation of the superintendent and the affirmative vote of the school committee. See G. L. c. 71, § 38. What happened was not a firing or dismissal midway through the plaintiff's term but rather a choice for a future term undertaken by the school superintendent as part of his yearly appraisal of nontenured personnel.

Further support for the proposition that the plaintiff was not "remove[d] or discharge[d]" can be found in G. L. c. 32, § 10, as amended through St. 1984, c. 473, § 1, and in an earlier version of § 16 (2) itself. Specifically, in § 10, which governs the right of a contributory retirement system member to a "superannuation retirement allowance," the terms "removed or discharged," "fails of nomination or reelection," or "fails of reappointment" are all set forth as distinct terms. See Rep. A.G., Pub. Doc. No. 12 at 88 (1974) (section 10 of c. 32 applies to all members of the State employee's retirement system who "fail of reappointment" and not merely to individuals failing of reappointment by the Governor). Fundamental to statutory construction is the principle that "where the Legislature has employed specific language in one paragraph but not in another, the language should not be implied where it is not present." *School Comm. of Brockton*, 393 Mass. at 263, quoting from *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982).

Similarly, a previous amendment to § 16 (2) — St. 1949, c. 746, § 2 — added the words "or failure of reappointment" following each appearance of the words "removal or discharge."[10] Section 16 (2) was subsequently amended, deleting the new language and the provision now contains only "removal or discharge." See St. 1951, c. 784, § 2. The amendment evinces an awareness that there is a difference between a "removal or discharge" and "failure of reappointment." We thus conclude that a person in the circumstances of the plaintiff is not entitled to the notice and hearing requirements of § 16 (2).

2. The plaintiff also argues that he has a Federal constitutionally protected property interest in "continued, effective employment" which flows from the procedural requirements of G. L. c. 32, § 16 (2). Specifically, he claims that he has a protected "property" interest in notice and a fair factual summary filed with the Teachers' Retirement Board.

The short answer parallels the discussion above. The plaintiff can prevail on his constitutional claim only if he has a "property" right in his employment. "To have a property interest in a benefit, a person . . . must . . . have a legitimate claim of entitlement to it." *Board of Regents of State Colleges* v. *Roth*, 408 U.S. 564, 577 (1972). Cf. *Roslindale Motor Sales, Inc.* v. *Police Commr. of Boston*, 405 Mass. 79, 82 (1989). While it is, of course, true that a person cannot, without due process, be deprived of a "property" right, due process "is a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents of State Colleges* v. *Roth, supra* at 576. See *Goldberg* v. *Kelly*, 397 U.S. 254 (1970). However, "[p]roperty interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independ-

---

[10] This amendment altered § 16 (2) to provide in relevant part:

"The removal and discharge or *failure of reappointment* of any member in service . . . shall not become effective unless and until a written notice and fair summary of facts upon which *such action* was based has been filed with the board. The procedure set forth in subdivision (1) of this section . . . shall apply to all proceedings involving such *removal or discharge*. If the board finds that the removal or discharge or *failure of reappointment is not justified. . . .*"

ent source such as state law . . .' " *Cleveland Bd. of Education* v. *Loudermill*, 470 U.S. 532, 538 (1985), quoting from *Board of Regents of State Colleges* v. *Roth, supra* at 577. If the plaintiff was not "remove[d] or discharge[d]" within the meaning of G. L. c. 32, § 16, he would have no constitutionally protected property interest in his employment as an administrator of special education. The plaintiff lacks statutory tenure and protection under G. L. c. 71, § 42A, as the administrator of special education because he had not served in that position for the requisite number of consecutive years. As a nontenured administrator with a one year employment contract, the plaintiff has no right to continued employment.[11] See *Board of Regents of State Colleges* v. *Roth*, 408 U.S. at 578. Contrast *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. at 538-539. Accordingly, as the plaintiff has no legitimate claim of entitlement to continued employment, the severance of his employment relationship "does not constitute a deprivation of a property interest, and thus no claim can be made that property has been taken without due process." *Martin* v. *School Comm. of Natick*, 395 Mass. 461, 465 (1985).

3. The plaintiff's final claim is that he is entitled to tenure under G. L. c. 71, § 41, because he never *received* timely notice (by April 15) and he was up for his fourth consecutive year in that position. See, e.g., *School Comm. of West Springfield* v. *Korbut*, 373 Mass. 788, 797 (1977).

Assuming that the plaintiff is a "teacher" for purposes of the statute, we hold that the notice requirements imposed upon the defendants by § 41 were met. The superintendent's written evaluation was received and signed by the plaintiff well before the April 15 deadline. That evaluation clearly informed the plaintiff (in writing) that the superintendent was not recommending him for reappointment.[12] See and compare *Bonar* v.

---

[11] There are not set standards for reappointment of nontenured administrators or teachers. As such, State law leaves the decision to reappoint a nontenured teacher or administrator for another year to the discretion of the superintendent and school committee.

[12] The superintendent's recommendation was a condition precedent to the plaintiff's reappointment. See G. L. c. 71, § 38; *Farrington* v. *School Comm. of Cambridge*, 382 Mass. 324, 325 n.1 (1981).

*Boston*, 369 Mass. 579, 583-584 (1976). Moreover, the agreed facts reveal that a certain measure of avoidance was practiced by the plaintiff. See *Conte* v. *School Comm. of Methuen*, 4 Mass. App. Ct. 600, 603-605 (1976).

*Judgment affirmed.*